on behalf of Mr. Porter. Assistant State's Attorney Brian Hodes on behalf of the people of the state of Illinois. Alright, two Brian's this morning. What we don't have is a James Fitzgerald Smith. Things will go easier today. He sends his regrets, but we'll listen to the tape of the oral arguments and participate in the decision that will be rendered after we're done listening to you today. Half an hour, 15 minutes apiece, save some time for rebuttal. Please proceed. May it please the court. Mr. Porter has presented an actual innocence claim based on the statement that completely exonerates him. And this evidence, whether it's considered an affidavit or not, requires an evidentiary hearing to determine whether Mr. Porter was wrongfully convicted. In the alternative, counsel rendered unreasonable assistance in failing to have the document notarized despite handling the case for 14 years. Porter has presented a strong claim of innocence. He's provided the statement of co-defendant James Austin, asserting that Mr. Porter was present for these shootings, but did not participate in them in any way. I have a series of questions about that. If you don't mind, why don't I ask them? Please do. The premise is that there was some violation of the standard of representation for not calling him, not moving for severance, right? That was one of the claims in the petition. It's not the one that we're pressing in this particular appeal, but there is a claim of that nature in the amended petition, I believe. Well, let me just focus on that for a few minutes. Okay. First of all, what was the impediment to calling Mr. Austin as a witness following his acquittal at the close of the state's case? As in why there was no longer any Fifth Amendment issue at that point? Not unless double jeopardy is erased from the blackboard. Well, I suppose that's theoretically a possibility, although we don't really know any of the circumstances of that because counsel never pursued that. Isn't it your burden in a circumstance like this to say that when you're claiming this is error, or saying that this was newly discovered, when you have someone who has absolutely been sitting beside with his counsel, sitting beside counsel and Mr. Porter throughout, and all of a sudden the skies open up, the sun shines down on Mr. Austin, and he is able to testify, and they let him walk out the door. And then they claim newly discovered evidence afterwards when they chose not to call him as a witness when he was absolutely available to be called. I think it's likely an instance of ineffective assistance of trial counsel, if that's the case, if he truly was available at that time. And that is certainly implicated in the claim regarding the failure to file a motion to sever. Well, how can it be ineffective assistance of counsel when his own testimony, if you call this an affidavit, which is another issue, contradicts Mr. Porter's own testimony that he was a block away at the time the shooting started? Well, I agree that we already have some trial evidence in favor of the defense, certainly. And under Ortiz, anything that adds truly or in fact is considered cumulative. But here we have, there are some differences, that's true. Well, I think his presence is a pretty big difference, don't you? That's true. But I think that's a question for an evidentiary hearing. There may be some differences in this evidence, and there may be some contradictions. But there were contradictions in the state's evidence, too, and this was very thin evidence here. The state's witnesses had a very thin grasp of who Mr. Porter was. Some of them thought he was a completely different person named Haji. They couldn't seem to agree whether he participated in the offense itself, or if he... Well, I think the Haji issue is more what was this guy's name, not that it was somebody they hadn't seen before. But let me get back to the issue of, you raise in here that there was a failure to meet the applicable standards for failing to move for severance. Can you enlighten me of what the grounds for severance would have been? Well, that's part of the problem with that claim. I don't think that the claim really gives you any indication why there would have been severance, necessarily. Now, at some point it does... Isn't it true that there are really two grounds available for severance in Illinois? Yes. You want to tell me what they are? Well, if you have antagonistic defense... Is there anything antagonistic about the defenses of these individuals? Not that I can see, but... And what's the other one? The other one escapes my memory right now. Brutal? Oh, okay, that's correct. Is that present in this case? No, I don't think there was any brutal issue, necessarily. So, what would be the possible grounds that any competent lawyer could use to ask for the severance that you say he was ineffective for not asking? Well, Your Honor, I'm not pressing that claim right now. I'm saying that to the extent that Austin became available once he was directed out in this case, counsel was ineffective in failing to... If there is an availability issue here, that trial counsel was ineffective in failing to put him on the stand... Can we get to your second issue, though, if we can't get past the first? Well, certainly if you think that the affidavit is of no moment in any event, then I don't think it would necessarily matter. I mean, you do have counsel, post-conviction counsel, representing Mr. Porter for over 14 years and accomplishing virtually nothing. In fact, the only thing he did over that time was finally a patently non-meritorious apprendee claim on Mr. Porter's case. No matter how deficient Mr. Hayes' representation of the defendant in this post-conviction might be, no matter how dilatory he was in waiting an incredible 14 years to bring this claim forward, if ultimately there is no valid claim in the first place, what can we do? You could find that he was still unreasonable simply for taking as long as he did. This is extreme delay. I don't think you're going to get much argument there. He didn't do anything. He claimed he was doing a lot. He said he was interviewing. He said that there were people recanting their testimony. He said there were people in Indiana. He said he was going to get statements, and he didn't do anything. That's correct. So I don't think you have any problem there. Well, there is that Kelly case that indicates that a delay of this nature combined with the inability to accomplish anything is essentially of itself unreasonable assistance. And I think that there could be an alternative argument to that effect, that where the record reveals that counsel just did nothing for that long of a period, despite his certificate, I think you could say that that was unreasonable assistance of counsel. This is a long period of time. The court was exhibiting growing impatience over the constant delay and the lack of progress. I think Mr. Hayes is well aware of that. He's well used to that. That may be true, Your Honor, but I don't think it necessarily means that that was reasonable assistance in this particular case. And I mean, he did file a detailed Rule 651C certificate which indicated essentially every single thing that he did, which was each portion of the record that he read, the fact that he was looking for witnesses, everything that he did. And there was never anything there indicating that he was trying to do anything about Mr. Austin's statement to have it notarized to correct the defect that the State had identified in its motion to dismiss. But getting back to the statement itself, it's a complete exoneration of Mr. Porter. It's newly discovered material, non-cumulative evidence that is likely to change the outcome based on the trial evidence being so weak. Let me get back to that issue. You say it exonerates him when the testimony of Mr. Porter himself contradicts the content of the purported affidavit by placing him on the scene when Mr. Porter testified clearly that he was a block away when the shooting happened. Again, I think it's a question for an evidentiary hearing. I don't think it's a question for a dismissal straight on the pleadings here, especially when the State's evidence was so weak. In addition to the problems in the State's testimony, you have no incriminating statement on Mr. Porter's behalf. There's no physical evidence linking him to the offense. And even the trial court at sentencing told Mr. Porter, if you are in fact innocent, I am doing a grave injustice here. And that's a pretty remarkable statement and not the kind of thing one would expect from a trial court. Our valued colleague, now departed, Judge Surya, was justifiably noted for his humility and his kindness to people who appeared before him. And I read that with a smile on my face because knowing and having tried cases in front of Judge Surya over the years, he was somebody who never, ever said that anything that was done by a human being is infallible. And it was just really an acknowledgment of that. And to say that he had a reasonable doubt at the time, which is what you're really implying, I think is really not justified from that isolated comment. Well, I don't think I would say that he was experiencing reasonable doubts at that particular moment because then, of course, he would have overturned his conviction at that point. I think it's more a question of whether he was, this was a close call. The court may have found that he was proved guilty beyond a reasonable doubt, but the evidence certainly wasn't defined in this case. And it makes sense based on the evidence. And under these circumstances, a complete exoneration of Mr. Porter, even if there are some differences between the accounts of the defense witnesses and what Mr. Austin says, I think it's a matter for an evidentiary hearing to determine whether Mr. Austin is credible, whether his testimony is convincing, and whether it's enough to take this very on-the-fence kind of case the other way. And I don't think that it's not proper to dismiss it at this point in light of the fact that it is a complete exoneration, which is the hallmark of actual innocence. And accordingly, if there are no further questions, we ask that this Court reverse the dismissal of Mr. Porter's petition and remand the cause for an evidentiary hearing. Thank you, Mr. Chairman. In the alternative, we ask for further second-stage proceedings. Thank you very much, Mr. Chairman. Thank you. May it please the Court, Assistant State's Attorney Brian Hodes, on behalf of the people of the State of Illinois. There are two fatal defects with the actual innocence claim, post-conviction of public counsel, is articulated in his briefs. And they preclude its consideration of whatever merit this claim might have. First of all, there is a dispositive procedural default. The arguments advanced below by private counsel and then public counsel, in other words, first he had Ms. Cunliffe, who was private attorney, so he had a counsel petition, not a pro se petition, and then appointed counsel who was eventually Mr. Hayes, was that former co-defendant James Austin's purported witness statement, and that's about as far as I'm willing to concede what that document is, was evidence of ineffective assistance by trial counsel, Barry Gross, I believe. Not actual innocence. Actual innocence doesn't show up. That precludes its consideration here under the Illinois Supreme Court's holding in Jones. Jones said, our appellate court is not free, as this court is under its supervisory authority to excuse in the context of post-conviction proceedings an appellate waiver caused by the failure of a defendant to include issues in his or her post-conviction petition. Even if this claim was somehow implicit in the petition, that wouldn't be sufficient under this Court's holding in People v. Cole. But if you were to get to the content of the statement and generously ignore its contradiction of the defendant's own testimony under oath at trial, if you just believed Mr. Austin's statement, wouldn't that be actual innocence? Our position is that it wouldn't be, but it can't be addressed, first of all, because the affidavit, in addition, or whatever this is, is not an affidavit. It's not evidence. Also, for the reasons Your Honor pointed out But isn't the reason it's not evidence because in the course of 14 years, nobody went to the penitentiary where Mr. Austin was or tracked him down thereafter and said, oh, by the way, would you raise your right hand and swear to this statement that you signed? Wouldn't that be the reason? That could be the reason, but there's a problem with that, which is that the record shows that Mr. Hayes sent out investigators over and over and that Ms. Cunliffe sent out an investigator in the first place. I think it was John D. Rhea who apparently took down this statement, which allegedly Mr. Austin signed on September 23rd of 1996. If we're going to just say that everything Mr. Hayes said is a lie, then maybe there's an argument there, but we can't do that because that's not the rule on post-conviction counsel. How do you get around the Kelly case, People vs. Kelly, where the court holds that if there's a 12-year delay between the filing of the initial post-conviction petition and the filing of a Rule 651C certificate, that that is manifestly unreasonable assistance? Here you not only have 12 years, you've got even more. I don't think that the number of years is the sole determining factor. I don't think Kelly was raised, I'm sorry, I'm honestly not as familiar with it, but I can't imagine that it just cut off 12 years and said, once it gets to 12 years, the clock starts over and he gets a new lawyer. Well, I mean, this Austin statement, whatever you want to call it, was signed in 1996.  Tiger Woods turned pro in 1996. Yes, I know. A lot of things have happened in the meantime. I have a list of them. And Mr. Hayes said that he was out getting statements. He was out getting recantations. It was a really interesting investigation, and then filed ultimately the 651C, resting on what had been filed, you know, more than a decade before. How is that reasonable and how is that of any assistance to anybody? He said that he was trying to get it. He didn't say I've gotten statements and he said witnesses are going back and forth and recanting. I find it difficult to defend the time lag and some of the statements in the record, but I don't think that it's dispositive. And he went in and said, here's what I'm going to do, and every time the judge or judges said that's a good reason, and he went and did it, supposedly. I don't know. Just because it didn't bear fruit doesn't mean he could have done it. It is alleged. Yes. I mean, if one were to go through the exercise of repeating the protestations of activity of Mr. Hayes, you could induce narcolepsy in just about any reader. Okay? He did nothing. So I'm just trying to figure out what's so different about this circumstance versus the Kelly case. Well, first of all, as I said, I don't have Kelly in front of me, and I don't think it was raised, so I'm not as familiar as I'd like to be with it. I'd be happy to prepare something explaining why I think it differs, but I'm going to assume that in Kelly it was a pro se petition in the first place. And that in this case, the petition and, in fact, the affidavit were procured by counsel. Counsel petitions are different, as this Court has noted, from pro se petitions. While the pro se petitioners are, you know, 90-whatever percent of the litigants. But the thing that was filed by, I think it was Erica Cunliffe or something? Yes, sir. The thing that was filed by her was just done at the urging of the Court to make sure it was going to be timely filed, right? Yes, but she also – And then she exited stage right. Well, there was a little more that occurred. She filed an initial petition, then she filed an amended petition, and she also, with the initial petition, filed this witness statement attributed to former co-defendant James Austin. She had an investigator get it. She could have actually – it's unclear as to why that statement wasn't perfected on her watch, if it could be perfected. In other words, why that statement wasn't turned into a valid piece of evidence. She sent an investigator out there. Investigator, supposedly. Investigator said, I represent a lawyer for the defendant. And they signed this kind of – and the investigator appears, prepared the witness statement, which he signed. It doesn't – He signed it. He initialed it on every page. I mean – Yeah, yeah. And if Mr. Ray, the investigator, was a notary public, I suppose he could have had him notarize it. But you're also in a state penitentiary at that moment, and that may not have – they may not have had a jail guard nearby who was also a willing notary public. That's true. So, you know, the – That's true. And who knows what happened after that? We don't know what happened. But we do know that this man, if he's really an investigator, goes out there knowing some of these things, too. I mean, if you're an investigator, I would assume you go out there knowing, gee, it might be hard to get a notary public if I want to get a valid piece of evidence. But the point is, Hayes didn't even tell us that in the 651C. He didn't even explain why there might have been some difficulty in getting this statement notarized. There's no indication at all as to why there was a problem getting it done. That's true. But the presumption that springs from it is that he was trying to get witnesses, and that he sent investigators out and – If ever a presumption was rebutted on reasonable assistance, this seems like it was pretty well rebutted. Eighteen years of saying I'm going to do something, and I never did anything. He was not able to get the affidavit. That doesn't mean that it was gettable, for lack of a better word. All we know is he didn't get it. Right. Sworn to. But they have a statement that's signed on each page. It's allegedly signed. And why don't we move on to any other points that you have? Actually, I think that's pretty much it. We think that counsel rendered reasonable assistance under the circumstances, and that defendant's actual innocence claim can't even be entertained because, first of all, the predicate for this document isn't evidence, and it was waived, so below. And the ineffective assistance of counsel claims that counsel discussed with Your Honor weren't raised in the appellate briefs. He abandoned those. So under these circumstances, I think this Court should affirm the dismissal of defendant's petition. Thank you, Your Honor. Thank you. Thank you. Under Suarez and other Rule 651C cases, there is no harmless error for provision of unreasonable assistance of counsel. So if this Court finds that counsel was unreasonable, given what he did, and it seems a likely conclusion to make under these circumstances, it doesn't matter what, even if the problems that Justice Epstein identified in the particular statement regarding potential conflicts with Mr. Porter's statements, that's a violation of Rule 651C and remand for further proceedings is required under those circumstances. Let's compare this with the jurisprudence that's evolved over the years, Mr. McNeil, with the higher standard of ineffective assistance of counsel. Under Strickland, even if you get to the point through the first part of Strickland that there was representation rendered which didn't meet the standard, a reasonable standard, you then have to go to the second prong, which would basically ask you whether it undermines the confidence you have in the How deficient the standard was, the representation was under the first prong, you go nowhere, right? That's correct with regard to ineffective assistance. Right. And it's clear that the standard on post-conviction is below the standard required for ineffective assistance. In other words, you could have ineffective assistance, but not unreasonable assistance, correct? That is true, yeah. I mean, well, that's true with regard to the deficiency prong. Right. And now what you're really doing is you're saying there is no second prong on a post-conviction even though the protections for the defendant are lesser than apply on a Strickland standard. True, but the Supreme Court has said that. They said that in Suarez. They said that the merit, it doesn't matter. If there's a violation of Rule 651C, you have to remand for further proceedings. And I understand what you're saying about the, you know, there's two prongs in an ineffectiveness claim, and in the sense that you're ripping out the prejudice prong for post-conviction counsel, that might imply that you're applying a lesser standard overall. And you're applying a lesser standard to be met by the petitioner than would occur if you had the so-called broader protections of the ineffective assistance. I think that's a good point. Which is kind of hard to justify, isn't it? It seems somewhat counterintuitive in light of the fact that you're dealing with a lesser standard of reasonable assistance. However, cases dealing with this, including Suarez in particular, just have never got into that. If counsel is unreasonable through, i.e., if you're able to establish to a certainty that it makes absolutely no difference, hypothetically in a case, that you would still be required to reverse and remand. Under Suarez, you would. It might encourage a lot of negligent lawyering.     I think that's a good point. It's sort of a perverse thought that the more incompetent, negligent, careless, ineffective the lawyer is on the PC, the better of a chance that the client has of getting to an evidentiary hearing because there's no prejudice prong invoked. I know the cases haven't really gotten there. That's correct. Like you're saying, Suarez and several others. Based on Suarez, I think that's the state of the law presently. I don't think that if push came to shove in one of those conditions, like if the affidavit said I was with the defendant on the moon at the time this happened, that you would be required to reverse and remand just because the lawyer sat on his rear end for 14 years and did nothing. Under Suarez, absolutely. Do you really think that's what the Supreme Court would say? I think it did say that in Suarez. And I think that this is one of the very few areas where the Supreme Court has actually stepped in and enforced its rules at all costs. I know from personal experience that they don't always do that. But with regard to Rule 651C, they absolutely do say that. They say if there's unreasonable assistance, if 651C is violated, bam, you need remand for the proceedings. End of story. Well, you have great self-control. Not the blushes you make that argument. Thank you very much. Well did. Thank you very much. Thank you. Okay. We will take this matter under advisement. Thank you for the briefs and the argument. We will issue a decision in due course.